FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 13, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

JOSEPH D. A.,

               Plaintiff,

   v.

ANDREW M. SAUL,
COMMISSIONER OF SOCIAL
SECURITY,[1]

            Defendant.

NO: 2:18-CV-382-FVS

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary judgment.

ECF Nos. 10 and 11. This matter was submitted for consideration without oral

---

[1] Andrew M. Saul is now the Commissioner of the Social Security

Administration. Accordingly, the Court substitutes Andrew M. Saul as the

Defendant and directs the Clerk to update the docket sheet. *See* Fed. R. Civ. P.

25(d).

argument.  The Plaintiff is represented by Attorney Dana C. Madsen.  The

Defendant is represented by Special Assistant United States Attorney Kathryn A.

Miller.  The Court has reviewed the administrative record, the parties' completed

briefing, and is fully informed.  For the reasons discussed below, the Court

**GRANTS** Defendant's Motion for Summary Judgment, ECF No. 11, and **DENIES**

Plaintiff's Motion for Summary Judgment, ECF No. 10.

## JURISDICTION

Plaintiff Joseph D. A.[2] filed for supplemental security income and disability

insurance benefits on June 21, 2016, alleging an onset date of January 1, 2012.  Tr.

213-25.  Benefits were denied initially, Tr. 136-42, and upon reconsideration, Tr.

148-55.  A hearing before an administrative law judge ("ALJ") was conducted on

December 14, 2017.  Tr. 39-79.  Plaintiff was represented by counsel and testified at

the hearing.  *Id*.  The ALJ denied benefits, Tr. 12-32, and the Appeals Council

denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. §§

405(g); 1383(c)(3).

/ / /

/ / /

---

[2] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first

name and last initial, and, subsequently, Plaintiff's first name only, throughout this

decision.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ~ 2

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 39 years old at the time of the hearing. Tr. 44. He has his GED, and a "master's certification" in computer applications technology support. Tr. 44-45. He testified that at the time of the hearing he was "couch surfing," and helping take care of his quadriplegic friend and her dog. Tr. 60-61. Plaintiff has work history as a traveling carnival worker, blender, grounds keeper, and cashier. Tr. 45-46, 67-69. He testified that he cannot work because of he has blackout seizures. Tr. 47.

Plaintiff testified that he has had epilepsy since the age of two. Tr. 47. He reported that his seizures are induced by stress, and at the time of the hearing he was having two to three seizures a week "if not more" that last from a split second to six hours at a time. Tr. 48-49. During the "blackout" he experiences loss of time, confusion, and disassociation. Tr. 48. Plaintiff reported that he has arthritis in his left shoulder and a bulging disc in his back. Tr. 53. He can walk about a mile, stand for 20-30 minutes before he has to sit down, has trouble bending over and climbing stairs, can lift five pounds with his left arm, and can lift ten pounds with his right arm. Tr. 54-55. Plaintiff reported that he smokes marijuana for his seizures and arthritis. Tr. 56.

# STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing

the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). In making this determination, the Commissioner also must consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the

national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2012, the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: left shoulder acromioclavicular (ACL) joint arthritis, seizure disorder, and cannabis use disorder. Tr. 17. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 19. The ALJ then found that Plaintiff has the RFC

> to perform a restricted range of light work. The claimant can lift and carry a maximum of 10 pounds frequently and a maximum of 20 pounds occasionally. He can sit for a total of six hours in an eight-hour workday with normal breaks, and he can stand and walk for a total of six hours in an eight-hour workday with normal breaks. The claimant can occasionally climb ramps and stairs, kneel, crouch, and crawl. He can never climb ladders, ropes, or scaffolds. The claimant can occasionally reach overhead with the left upper extremity. He can never be exposed to dust, gases, or industrial-type respiratory irritants: dangerous, moving machinery; unprotected heights; or the operational control of motor vehicles. The claimant can perform simple, routine work. He can perform low-stress work that requires no more than occasional simple, routine work-related decisions or simple work changes.

Tr. 19-20. At step four, the ALJ found that Plaintiff is capable of performing past relevant work as a cashier/checker. Tr. 25. In the alternative, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff

can perform, including: cashier, cafeteria attendant, and bottle line attendant. Tr. 25-26. On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, from January 1, 2012, through the date of this decision. Tr. 26.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II of the Social Security Act and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 10. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims; and
2. Whether the ALJ properly considered the medical opinion evidence.

## DISCUSSION

### A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably

have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons. Tr. 20-21.

### 1. *Daily Activities*

First, the ALJ found that Plaintiff's activities are "inconsistent with the presence of debilitating functional limitations." Tr. 21. A claimant need not be utterly incapacitated in order to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) ("the mere fact that a plaintiff has carried on certain activities . . . does not in any way detract from her credibility as to her overall disability."). Regardless, even where daily activities "suggest some difficulty functioning, they may be grounds for discrediting the [Plaintiff's] testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

In support of this finding, the ALJ cited Plaintiff's report that he cooked meals, cleaned the motel room he shared with his girlfriend every day, shopped for groceries, socialized with friends and family members, did laundry and folded clothes, cared for a dog, played video games, read, watched television, and used a computer. Tr. 21 (citing Tr. 401-02, 409). The ALJ also noted that Plaintiff took care of his girlfriend, who was wheelchair bound, including taking her for walks, doing her shopping, and taking care of their household. Plaintiff also admitted that he would have the ability to take care of a home and a yard. Tr. 21 (citing Tr. 61, 401-02, 409). Finally, as noted by the ALJ, Plaintiff was able to do seasonal work from spring through the fall. Tr. 21, 45-46; *See Bray v. Comm'r of Soc. Sec. Admin.*,

554 F.3d 1219, 1227 (9th Cir. 2009) (the ability to work can be considered in assessing Plaintiff's symptom claims).

Plaintiff generally cites case law indicating that the ability to do household chores, grocery shop, cook meals, and see friends "would not necessarily detract from [Plaintiff's] credibility in a disability case." ECF No. 10 at 15. However, regardless of evidence that could be viewed more favorably to Plaintiff, it was reasonable for the ALJ to conclude that Plaintiff's documented daily activities and social functioning, including taking care of his disabled girlfriend and engaging in seasonal work, was inconsistent with his allegations of debilitating functional limitations. Tr. 21; *Molina*, 674 F.3d at 1113 (Plaintiff's activities may be grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment); *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a clear and convincing reason to discredit Plaintiff's symptom claims.

## 2. Failure to Comply with Treatment

Second, the ALJ found Plaintiff's "noncompliance with recommended treatment with prescribed anti-seizure medication in favor of continued marijuana use suggests his seizures are not as severe as he has alleged." Tr. 22. Unexplained, or inadequately explained, failure to follow a prescribed course of treatment may be the basis for discounting Plaintiff's symptom claims unless there is a showing of a

good reason for the failure. *Orn*, 495 F.3d at 638. In support of this finding, the ALJ noted that in September 2014, despite his treating neurologist's recommendation that he take prescribed anti-seizure medication, Plaintiff "stated he was not interested in any prescribed anti-seizure medication at that time because he felt using marijuana decreased the frequency of his seizures." Tr. 22 (citing Tr. 319). His treating physician also advised him to have his marijuana use monitored, and follow-up yearly with the epilepsy treatment clinic "unless he changed his mind about wanting to start prescribed anti-seizure medication." Tr. 22 (citing Tr. 322).

Further, in November 2015, Plaintiff presented with interest in taking anti-seizure medication, and in February 2016 he "admitted that Lamictal was working well to treat his seizure disorder." Tr. 22 (citing Tr. 323, 373). But in August 2016, Plaintiff reported he was not taking prescribed medication because he had a "phobia with pills," which, as noted by the ALJ, was the only time in the record Plaintiff alleged this phobia. Tr. 22 (citing Tr. 397). In November 2016, Plaintiff was prescribed anti-seizure medication again, after reporting that he had discontinued taking his prescribed medication in February 2016 because "he felt it made his seizures worse, and he claimed he felt smoking marijuana 'helped with his seizures.'" Tr. 22, 418. Throughout 2016 and 2017, Plaintiff consistently reported smoking marijuana on a daily basis, although in October 2017 he contended that he did not use marijuana when he was on prescribed anti-seizure medication. Tr. 22, 319, 373, 398, 418, 446. Finally, in October 2017, Plaintiff's treating neurologist

advised Plaintiff that "there was no reason for [Plaintiff] to follow-up with the epilepsy clinic if he did not want [to] take a prescribed anti-seizure medication. Dr. Atkinson also told [Plaintiff] his seizures were caused by a structural abnormality of the brain he would not outgrow and he would continue to have seizures no matter how much marijuana he smoked." Tr. 22 (citing Tr. 447 (noting Plaintiff was advised to follow up at the clinic only if he follows instructions and remains compliant on his anticonvulsant therapy).

Plaintiff contends that he reported "significant adverse side effects from the medication prescribed. Therefore, his failure to use prescription medications for his seizures should not be used as a reason for discounting his credibility." ECF No. 12 at 3-4 (citing *Varney v. Sec. of Health and Human Svc.*, 846 F.2d 581 (9th Cir. 1988)). In support of this argument, Plaintiff cites (1) his report to his treating neurologist that he "didn't like the way [the medications] made him feel"; and (2) another report to Dr. Atkinson that he did not like taking seizure medication as a child because the side effects "occurred so randomly" and made him feel "wired." ECF No. 12 at 3 (citing Tr. 319, 447). However, as noted by Defendant, Plaintiff did not describe any specific "unpleasant side effects" from the medications prescribed by [his treating neurologist] Dr. Atkinson. Rather, he offered varying reasons to justify his non-compliance with the doctor's prescribed treatment," including: claiming to have a "phobia with pills" on one occasion, and reporting that his anti-seizure medication actually increased his seizures. ECF No. 11 at 10-12

(citing Tr. 50-51, 319, 397). In addition, as noted by the ALJ, Plaintiff repeatedly indicated that he preferred to self-medicate with marijuana, which he felt was most effective at decreasing the frequency of his seizures. Tr. 22; *See, e.g.*, *Molina*, 674 F.3d at 1113-14 (affirming an ALJ's rejection of claimant's testimony based on a resistance to treatment, where there was no evidence that the resistance was based on her impairments rather than her personal preference).

Based on the foregoing, and regardless of evidence that could be considered favorable to Plaintiff, the Court finds it was reasonable for the ALJ to conclude that Plaintiff's failure to comply with prescribed treatment was inconsistent with the alleged severity of his complaints. *See Burch*, 400 F.3d at 679 (where evidence is susceptible to more than one interpretation, the ALJ's conclusion must be upheld). This was a clear and convincing reason for the ALJ to discredit Plaintiff's symptom claims.

### 3. Lack of Objective Medical Evidence

Third, the ALJ found the objective evidence is inconsistent with the presence of debilitating physical impairments. Tr. 22-24. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant ant factor

in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

In support of this finding, the ALJ set out the medical evidence contradicting Plaintiff's claims of disabling physical limitations during the relevant adjudicatory period, including: normal muscle strength and muscle tone; normal and mild findings on shoulder x-rays; full range of motion of thumbs, wrists, elbows, shoulders, neck, back , hips, knees, ankles, and forearms; 5/5 motor power in all extremities; negative straight-leg raising test; and normal movement of all extremities. Tr. 23 (citing Tr. 388-89, 391, 408, 411-12, 415, 437, 443). The ALJ also cited a consultative physical examination from August 2016 that "did not demonstrate any objective evidence of impairment or limitation of function related to his alleged pain." Tr. 23, 408-12. Finally, the ALJ acknowledged that Plaintiff had a "history of seizures since childhood and had an extensive family history of epilepsy," but also cited (1) a normal awake and asleep electroencephalograph (EEG) in May 2014, and (2) a September 2014 MRI of the brain that was positive for atrophy of the left hippocampus relative to the right with increased FLAIR signal, which raised suspicion of mesial temporal sclerosis. "However, [Plaintiff's] left hippocampus atrophy and mesial temporal sclerosis were described as being mild, and the right FLAIR signal was described as being only mildly decreased." Tr. 23, 316, 326-27.

Plaintiff fails to identify or challenge these findings in his opening brief. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). In his reply brief, Plaintiff cites his treating neurologist's report that she "explained to [Plaintiff] that he has a structural abnormality in his brain that makes him have seizures and that he will not grow out of this. As long as it still [remains], he'll continue to have seizures and no matter how much marijuana he smokes his seizures will not go away." ECF No. 12 at 4 (citing Tr. 447). Thus, Plaintiff maintains that "even though the atrophy on October 6, 2017 in his brain may have been mild, it was significant enough to cause seizures according to Dr. Atkinson." ECF No. 12 at 4-5. However, regardless of objective evidence identifying the possible source of Plaintiff's seizure activity, which was acknowledged by the ALJ, the Court finds it was reasonable for the ALJ to find the severity of Plaintiff's symptom claims was inconsistent with "mild" objective evidence and largely benign clinical findings across the adjudicatory period. "[W]here evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch*, 400 F.3d at 679. The lack of corroboration of Plaintiff's claimed physical limitations by the objective medical evidence was a clear, convincing, and largely unchallenged reason for the ALJ to discount Plaintiff's symptom claims.

### 4. Additional Reasons

Finally, the ALJ found (1) Plaintiff's prior statements regarding the nature and severity of his left shoulder impairment, other musculoskeletal complaints, and

asthma are "inconsistent with debilitating symptoms" and "inconsistent with the presence of debilitating seizures"; and (2) Plaintiff failed to seek or require treatment for his left shoulder AC joint arthritis. Tr. 21-22 (citing Tr. 319, 328, 397, 412, 415). The Court may decline to address these reasons given by the ALJ for rejecting Plaintiff's symptom claims because they were not raised with specificity in Plaintiff's opening brief. *Carmickle*, 533 F.3d at 1161 n.2. As discussed above, unexplained failure to seek treatment may be the basis for discounting Plaintiff's symptom claims unless there is a showing of a good reason for the failure. *Orn*, 495 F.3d at 638. Moreover, in evaluating symptom claims, the ALJ may utilize ordinary evidence-evaluation techniques, such as considering prior inconsistent statements. *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). These were a clear, convincing, and unchallenged reasons for the ALJ to discount Plaintiff's symptom claims. *See Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief).

The Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's symptom claims.

**B. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who

review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray,* 554 F.3d at 1228 (quotation and citation omitted).

Plaintiff's argument as to this issue is entirely comprised of the conclusory assertion that the "ALJ has committed reversible error by not giving the appropriate weight to the opinions of the doctors that have examined [Plaintiff]; William Jackline, Ed.D. who examined [Plaintiff] on August 17, 2016 and John Arnold, Ph.D. who examined [Plaintiff] on October 20, 2016. The reasons given by the ALJ for discounting [Plaintiff's] symptoms are not clear and convincing reasons; therefore, there is no 'specific' and 'legitimate' reasons to discount . . . . the opinions

of the two psychologists that examined him, [Dr. Jackline and Dr. Arnold]." ECF No. 10 at 17-18. However, Plaintiff fails to "specifically and distinctly" identify or challenge any of the ALJ's reasons for discounting Dr. Arnold's opinion. *See Kim*, 154 F.3d at 1000 (the Court may not consider on appeal issues not "specifically and distinctly argued" in the party's opening brief). Despite Plaintiff's waiver, the Court will briefly review the ALJ's findings regarding Dr. Jackline and Dr. Arnold's opinions.

In August 2016, Dr. Jackline, a "consultative examining psychologist, opined the [Plaintiff] would have 'adequate' ability to understand, remember, and follow simple directions. He also reported [Plaintiff] would show moderately to, at times, significantly impaired ability to understand, remember, and follow 'increasingly lengthy, fast-paced and complex verbal information and directions.'" Tr. 24 (citing Tr. 403). The ALJ gave little weight to Dr. Jackline's opinion because "it appears[s] to be based, either wholly or in part, on the effects of [Plaintiff's] seizure disorder . . . which, as a psychologist, Dr. Jackline is not qualified to assess." Tr. 24. As noted by Defendant, the ALJ will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." ECF No. 11 at 15 (citing 20 C.F.R. § 416.927(c)(5)). The Court also notes that Dr. Jackline indicated the more severe of the limitations assessed "would occur when [Plaintiff] experienced his reported petit mal seizures." Tr. 403; *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir.

2008) (ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted).

In October 2016, Dr. Arnold opined that Plaintiff had marked limitations in his ability to understand, remember, and persist in tasks by following detailed instructions; adapt to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; maintain appropriate behavior in a work setting; and complete a normal workday and workweek without interruptions from psychologically based symptoms. Tr. 425. The ALJ gave little weight to Dr. Arnold's "check-box responses on a form" because (1) they were inconsistent with the results of his own mental status examination of Plaintiff, "which was within normal limits, with the exception of mildly depressed mood," and (2) they were inconsistent with "the results of all other mental status examinations contained in the record, which were within normal limits, other than for pressured and excessive speech in 2013." Tr. 25. These were specific, legitimate, and unchallenged reasons to reject the limitations opined by Dr. Arnold. *See Tommasetti*, 533 F.3d at 1041 (ALJ may properly reject a medical opinion if it is inconsistent with the provider's own treatment notes); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (an ALJ may discount an opinion that is conclusory, brief, and unsupported by the record as a whole, or by objective medical findings).

Based on the foregoing, the Court finds no error in the ALJ's consideration of the medical opinion evidence.

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment as long as it is supported by substantial evidence. 42 U.S.C. § 405(g). As discussed in detail above, the ALJ provided clear and convincing reasons to discount Plaintiff's symptom claims, and properly considered the medical opinion evidence. After review the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 10**, is **DENIED**.

2. Defendant's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED**.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel, enter judgment in favor of the Defendant, and **CLOSE** the file.

**DATED** February 13, 2020.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge